UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD F. DUPONT, JR., et al., | No. 2:24-cv-02591-DAD-JDP (PS) |
| Plaintiffs, | |
| v. | ORDER DENYING PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER |
| ARIK S. LEVY, et al., | |
| Defendants. | (Doc. No. 12) |

This matter is before the court on an *ex parte* application for a temporary restraining order filed by plaintiffs Donald F. Dupont, Jr. and Judith Ann Dupont, who are proceeding *pro se* in this action. (Doc. No. 12.) For the reasons explained below, plaintiffs' application for a temporary restraining order ("TRO") will be denied.

**BACKGROUND**

On September 25, 2024, plaintiffs filed this mortgage action against defendants Arik S. Levy and Confidant Board LLC.[1] (Doc. No. 1.) In their complaint, plaintiffs allege as follows:

/////

---

[1] The court notes that plaintiffs' complaint and the docket in this action refer to a defendant "Confident Board LLC," while defendants refer to this company as "Confidant Board LLC." (Doc. Nos. 1, 14.) The court uses "Confidant" in this order in keeping with defendants' spelling. (Doc. No. 14.)

1

Plaintiffs reside at and own the property located at 2970 Delmar Ave, Loomis, CA ("the Subject Property"), which they purchased in March of 2021. (*Id.* at 5, 7.) To complete that purchase, they took out a mortgage from defendants in 2021 in the amount of $1,100,000 secured by the Subject Property. (*Id.* at 5.) Plaintiffs made regular payments on this mortgage before defaulting on the loan at some point within the past two years. (*Id.*) Plaintiffs have paid $311,666.65 in interest, but more than $1,300,000.00 remains due and owing. (*Id.* at 5–6.)[2]

Defendants pursued foreclosure as a remedy to the default, with a trustee sale scheduled for January 17, 2024. (*Id.* at 5.) Plaintiff Donald Dupont, "to avoid the Trustee Sale" and avoid the Subject Property being foreclosed on, filed for bankruptcy on January 16, 2024. (*Id.*)

A trustee sale was later scheduled for August 28, 2024. (*Id.*) On August 26, 2024, plaintiff Judith Dupont filed for bankruptcy to "avoid a Trustee Sale" and avoid the Subject Property being foreclosed on. (*Id.*)

In their complaint, plaintiffs appear to assert three claims against defendants: (1) doing business as a lender without a Nationwide Mortgage Licensing System ("NMLS") license in violation of the Secure and Fair Enforcement for Mortgage Licensing Act (the "SAFE Act"), 12 U.S.C. § 5101; (2) failure to provide periodic loan statements in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, 12 C.F.R. § 1026.41; and (3) charging usurious interest in violation of California Civil Code § 1916.1.[3] (*Id.* at 3.) Plaintiffs do not clearly state in their

/////

---

[2] Plaintiffs do not clearly allege in their complaint when they first defaulted on the loan or how they reached these figures.

[3] The court notes that in plaintiffs' *ex parte* application for a temporary restraining order, plaintiffs refer to a claim under the Real Estate and Settlement Procedures Act ("RESPA"), which is not asserted in their complaint. (Doc. No. 12 at 1.) The court will not consider such a claim, as nowhere do plaintiffs state what they allege to be the violation of RESPA nor any facts in support of such a claim. *See McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991) (noting that Federal Rule of Civil Procedure 8 requires that a sufficiently plead complaint must "put defendants fairly on notice of the claims against them"). The court separately notes that even if the plaintiffs did state a claim under RESPA, they would not be entitled to a TRO because "individuals damaged by a RESPA violation are entitled to receive actual damages," not injunctive relief. *Gray v. Central Mortg. Co.*, No. 10-cv-00483-RS, 2010 WL 1526451, at *3 (N.D. Cal. Apr. 14, 2010) (collecting cases denying preliminary injunctions to RESPA plaintiffs).

1  complaint what relief they are seeking, but they do pray for the award of punitive damages and
2  costs.  (*Id.* at 6.)
3        On October 18, 2024, plaintiffs filed the instant *ex parte* application for a temporary
4  restraining order.  (Doc. No. 12.)  On October 25, 2024, the defendants filed their opposition to
5  the pending *ex parte* application and attached exhibits thereto.  (Doc. Nos. 14, 15.)

## LEGAL STANDARD

7        The standard for issuing a temporary restraining order is "substantially identical" to the
8  standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush &*
9  *Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "The proper legal standard for preliminary injunctive
10 relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to
11 suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his
12 favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109,
13 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see*
14 *also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*,
15 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a
16 preliminary injunction.").  The Ninth Circuit has also held that "[a] preliminary injunction is
17 appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were
18 raised and the balance of hardships tips sharply in the plaintiff's favor."  *All. for Wild Rockies v.*
19 *Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d
20 981, 97 (9th Cir. 2008) (en banc)). The party seeking the injunction bears the burden of proving
21 these elements.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).  Finally, an
22 injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the
23 plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

## ANALYSIS

25    In their opposition to this pending application, defendants argue that the court does not
26 have subject matter jurisdiction to hear this application, that plaintiffs lack standing to bring this
27 action because they are not the real party-in-interest, and that plaintiffs have not satisfied the
28 /////

3

requirements justifying the issuance of a temporary restraining order. The court considers these arguments in turn.

### A.      Subject Matter Jurisdiction

In their complaint, plaintiffs assert that this court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 on the grounds that federal question jurisdiction exists. (Doc. No. 1 at 3.) Defendants argue that the court lacks subject matter jurisdiction because the complaint does not truly present a federal question. (Doc. No. 14 at 4.) In particular, defendants contend that plaintiffs' claims pursuant to TILA and 12 C.F.R. 1026 do not convey jurisdiction because those regulations do not apply to the mortgage that is the subject of this action. (Doc. No. 14 at 4.)

"Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction over civil actions." *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 443 F. Supp. 3d 1152, 1156 (E.D. Cal. 2020) (citing *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994)), *aff'd*, 997 F.3d 848 (9th Cir. 2021). Federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). Subject matter jurisdiction is required; it cannot be forfeited or waived. *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156. Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"Federal question jurisdiction covers cases 'arising under the Constitution, laws, or treaties of the United States.'" *Unite Here Local 30 v. Sycuan of the Kumeyaay Nation*, 35 F.4th 695, 702 (9th Cir. 2022) (quoting 28 U.S.C. § 1331). "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1089 (9th Cir. 2002).

Here, defendants have not moved to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), but they do provide exhibits attached to their opposition to the pending motion in support of their argument that federal question jurisdiction is not present here.

4

1 (Doc. No. 15.) Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may
2 "challenge a federal court's jurisdiction over the subject matter of the complaint." *Nat'l Photo*
3 *Grp., LLC v. Allvoices, Inc.*, No. 3:13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24,
4 2014). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the
5 challenger asserts that the allegations contained in a complaint are insufficient on their face to
6 invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)
7 (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "When a defendant makes a factual
8 challenge 'by presenting affidavits or other evidence properly brought before the court, the *party*
9 *opposing the motion* must furnish affidavits or other evidence necessary to satisfy its burden of
10 establishing subject matter jurisdiction.'" *Sywula v. Teleport Mobility, Inc.*, 652 F. Supp. 3d
11 1195, 1208–09 (S.D. Cal. 2023) (emphasis added) (quoting *Meyer*, 373 F.3d at 1039). Because
12 this challenge to subject matter jurisdiction was raised in response to plaintiffs' *ex parte*
13 application for a TRO, plaintiffs have not yet had an opportunity to meaningfully contest
14 defendants' factual challenge.[4] It would be inappropriate for the court to evaluate defendants'
15 factual challenge without providing plaintiffs an opportunity to be heard. *See May Dept. Store v.*
16 *Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir. 1980) ("This court has determined that an
17 action should not be dismissed for lack of jurisdiction without giving the plaintiff an opportunity
18 to be heard unless it is clear the deficiency cannot be overcome by amendment.")

19 Nonetheless, the court does have an "'independent obligation to determine whether
20 subject matter jurisdiction exists,'" and therefore will consider whether plaintiffs have alleged a
21 federal question on the face of their complaint. *See Benoit v. PNC Bank*, No. 2:19-cv-01063-
22 MCE-DB, 2019 WL 2567140, at *2 (E.D. Cal June 21, 2019) (*quoting Ruhrgas AG v. Marathon*
23 *Oil Co.*, 526 U.S. 574, 583 (1999)). With respect to plaintiffs' claim brought under the federal
24 TILA statute, defendants argue that this claim does not confer jurisdiction because the loan which
25 they provided to plaintiffs was for "a commercial winery," and the winery is "only incidentally a

26

---

27 [4] As stated above, defendants filed their opposition to plaintiffs' *ex parte application* on October
25, 2024. (Doc. No. 14.) The trustee sale of the Subject Property is presently scheduled for
28 October 30, 2024. (Doc. No. 12 at 1.)

1  residence for its owners, [the plaintiffs]." (Doc. No. 14 at 4.) TILA only applies to "consumer
2  credit transactions 'primarily for personal, family[,] or household purposes.'" *Altmann v.*
3  *Homestead Mortg. Income Fund*, 887 F. Supp. 2d 939, 947 (E.D. Cal. 2012) (citation omitted).
4  In order to state a claim, plaintiffs must allege that the purpose of their loan was personal.
5  *Galindo v. Financo Financial, Inc.*, No. c-07-03991-WHA, 2008 WL 4452344, at *4 (N.D. Cal.
6  Oct. 3, 2008) ("Without any such allegations detailing the purposes of the loan, [plaintiff] has
7  stated no claim.")
8        Here, plaintiffs state in their complaint that the loan at issue was secured by their
9  "personal residence" and that they were not provided with periodic loan statements as required by
10 TILA. (Doc. No. 1 at 2–5.) Giving plaintiffs the benefit of the doubt at this stage of the
11 litigation, the court concludes that they have alleged a federal question on the face of their
12 complaint. *See Turcios v. Specialized Loan Servicing LLC*, No. 21-cv-07506-GW-JEM, 2022
13 WL 19569534 (C.D. Cal. Jan. 18, 2022) (finding that the plaintiff's claim under TILA alleging a
14 failure to provide periodic loan statements was the "only claim over which [the court had]
15 original subject matter jurisdiction"); *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir.
16 2000)("In general, courts must construe *pro se* pleadings liberally.").
17       Accordingly, the court will not reject plaintiffs' *ex parte* application for a temporary
18 restraining order on the grounds that it lacks subject matter jurisdiction to hear this case.[5]
19 **B.     Standing**
20       Defendants next argue that plaintiffs lack standing because as non-attorneys, they cannot
21 represent a trust *pro se*, and the loan at issue in this case was made to Donald F. DuPont Jr. and
22 Judith A. DuPont, Trustees of the Donald F. DuPont Jr. and Judith A. DuPont Revocable Trust.
23 (Doc. No. 14 at 7.)
24       It is true that a non-attorney trustee cannot enter an appearance for a trust, both under the
25 Federal Rules of Civil Procedure and the Local Rules of the Eastern District of California. *See*
26 L.R. 183(a) ("A corporation or other [legal] entity may appear only by attorney."); *see also Pac.*

---

[5] The court does not reach the issue of whether federal question jurisdiction exists as to plaintiffs' other claims.

*Prop. Mgmt. v. Delta Inv.*, No. 93-cv-01985-GEB-PAN, 1994 WL 740571, at *2 (E.D. Cal. July 20, 1994) (granting dismissal where the plaintiff filed the complaint *in propria persona* on behalf of the Pacific Property Management trust "while acting in his capacity as Trustee" but did "not allege[] any personal claims"). However, there is an exception to the general rule: an individual who is the trust's "beneficial owner" may appear *pro se* on the trust's behalf. *C.E. Pope Equity Tr. v. U.S.*, 818 F.2d 696, 697–98 (9th Cir. 1987) (quoting 28 U.S.C. § 1654).

Defendants argue that as in *C.E. Pope*, here "there is no indication in the pleadings or moving papers that either of the plaintiffs are beneficiaries of the trust in question." (Doc. No. 14 at 7.) However, in *C.E. Pope*, the Ninth Circuit based its conclusion that the *pro se* trustee's complaint was properly dismissed on the fact that "the record [did] not identify the Trusts' beneficiaries" and there was "no matter before the district court presented by, or on behalf of, [the trustee]." 818 F.2d at 697. Here, while the court acknowledges that plaintiffs have not specifically pled that they are the beneficiaries of the Donald F. DuPont Jr and Judith A. DuPont Revocable Trust nor have they attached any trust documents that would permit the court to draw that conclusion, plaintiffs have certainly alleged personal claims in this action. Accordingly, the court will proceed to address the merits of the pending motion, finding that plaintiffs' failure to allege that they are the beneficial owners of their trust was likely inadvertent and could be cured upon amendment.

**C.  Likelihood of Success on the Merits**

The likelihood of success on the merits is the most important *Winter* factor. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiffs bear the burden of demonstrating that they are likely to succeed on the merits of their claims or, at the very least, that "serious questions going to the merits were raised." *All. for Wild Rockies*, 632 F.3d at 1131. Defendants contend that plaintiffs have not made a showing that would warrant the granting of a TRO. (Doc. No. 14 at 1.) Specifically, they argue that plaintiffs are not likely to succeed on the merits of their claims. The court agrees.

/////

/////

7

1. TILA

Plaintiffs argue that their alleged violation of TILA warrants the granting of a TRO to enjoin the trustee sale of their personal residence. (Doc. No. 12 at 1.) TILA creates two potential remedies for violations: civil damages and recission of the underlying mortgage. *See* 15 U.S.C. §§ 1635, 1640; *see, e.g. Reganit v. Kay-Co. Invs., Inc.*, No. 2:09-cv-01120-MCE-KJM, 2009 WL 8633204, at *2 (E.D. Cal. Apr. 24, 2009) ("TILA remedies for the wrongful disclosures alleged are damages or rescission, not the avoidance of foreclosure."); *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159, 1163 (S.D. Cal. 2009) (noting that a plaintiff can seek damages, recission, or both under TILA).

It is not clear from their *pro se* complaint what plaintiffs are seeking in connection with their assertion of a violation of TILA. (Doc. No. 1.) If plaintiffs seek only civil damages for the alleged violation of TILA, there would be no effect on the trustee sale of their home and a TRO cannot issue. *Foster v. SCME Mortg. Bankers, Inc.*, No. 2:10-cv-00518-WBS-GGH, 2010 WL 2574074, at *2 (E.D. Cal. June 25, 2010) ("[A] TILA cause of action seeking only damages does not entitle plaintiff to preliminary injunctive relief because his damages claim will not be jeopardized by the foreclosure of his home."). On the other hand, if plaintiffs seek recission of the loan, then their own allegation that the mortgage was for their personal residence bars them from seeking recission under the TILA. *Amodo v. Homeq Servicing Corp.*, No. civ-s-10-177-MCE-DAD, 2010 WL 347730, at *2 (E.D. Cal. Jan. 22, 2010) ("While a recission claim may warrant the granting of a TRO, . . . Regulation Z, which implements TILA, states that, 'The right to rescind does not apply to . . . a residential mortgage transaction.'") Therefore, plaintiffs are not entitled to a TRO enjoining the trustee sale in connection with their TILA claim, because plaintiffs either cannot seek relief beyond damages or, if plaintiffs seek recission of the loan, they have established no likelihood of success on the merits of that claim.

2. NMLS License

Plaintiffs have also established no likelihood of success on the merits of their claim alleging that defendants provided a mortgage without an NMLS license. Defendants correctly argue that there is no private right of action under 12 U.S.C. § 5101. (Doc. No. 14 at 5–6); *Evans*

8

*v. Hood*, No. 1:19-cv-03346-CJN, 2020 WL 3605651, at *4–5 (D.D.C. July 2, 2020) ("[T]he SAFE Act does not contain a private right of action. . . . In fact, the SAFE Act does not appear to contain judicially enforceable provisions whatsoever.") Rather, the statute that plaintiffs rely on—as part of the SAFE Act—only encourages state legislatures to pass implementing legislation. *Evans*, 2020 WL 3605651, at *4; *see also CFPB v. 1st All. Lending, LLC*, No. 3:21-cv-55-RNC, 2022 WL 993582, at *2 (D. Conn. Mar. 31, 2022) (describing the SAFE Act's structure and how states have enacted "implementing legislation" to enforce it).[6] Accordingly, the court finds that plaintiffs have not carried their burden of establishing any likelihood of success on their claim that defendants lack an NMLS license as required by the SAFE Act.

### 3. Usury

Plaintiffs contend that the alleged charging of usurious interest rates by defendants warrants the granting of a TRO enjoining the trustee sale. (Doc. No. 12 at 1.) Under California law, the interest rate charged on certain types of loans are capped. *See Hamana v. Kholi*, No. 10-cv-1630-BTM-BGS, 2010 WL 3292953, at *2 (S.D. Cal. Aug. 19, 2010) ("The California Constitution limits the interest rate than can be charged on certain types of loans."). "[A] claim for usury requires '(1) [t]he transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction.'" *Rivera v. BAC Home Loans Servicing, L.P.*, No. 10-cv-02439-RS, 2010 WL 2757041, at *7 (N.D. Cal. July 9, 2010) (citation omitted). The charging of usurious interest "however, do[es] not affect the right of the payee to recover the principal amount of the note when due." *Epstein v. Frank*, 125 Cal.App.3d 111, 122 (1981). "A borrower therefore is still obligated to repay the principal on a note even if it has a usurious interest rate." *Hamana*, 2010 WL 3292953, at *2.

/////

---

[6] Plaintiffs do not identify a state cause of action that their claim could fall under, but defendants separately observe that there is no private right of action under California Finance Code §§ 22100 and 22751, which provide for forfeiture of interest on a loan if the lender did not have a license from the state commissioner authorizing them as a lender. (Doc. No. 14 at 6); *Lagrisola v. N. Am. Fin. Corp.*, 96 Cal. App. 5th 1178, 1198 (2023) (holding that there is no private right of action under California Finance Code §§ 22100 and 22751).

1     Plaintiffs have certainly not established that, even if they were to succeed on this claim,
2  they would be entitled to terminate the foreclosure proceedings. *Id.*; *see also Wadhwa v. Aurora*
3  *Loan Servs., LLC*, No. 11-cv-01784-KJM-KJN, 2011 WL 2681483, at *3 (E.D. Cal. July 8, 2011)
4  (finding that the plaintiffs had not shown how ultimate success on their claim "[for] usury would
5  entitle them to anything but damages"). Assuming plaintiffs' allegations are true, they "would
6  only be able to get treble damages for any interest [they] paid in excess of the allowed rate."
7  *Hamana*, 2010 WL 3292953, at *2. Plaintiffs allege that they paid $54,283.27 in usurious
8  interest, which would entitle them to $162,849.81 in damages should they succeed on their usury
9  claim. (Doc. No. 1 at 5.) However, plaintiffs have also alleged that they have a remaining
10 balance on their mortgage loan of either $788,333.35 or $1,300,000.00, both of which are far
11 greater than the amount of damages they could recover as to this claim.[7] (*Id.* at 6.) Therefore,
12 "even if [p]laintiff[s] can succeed in proving that the [mortgage] ha[s a] usurious interest rate[],
13 [they] may still be in default on the loans, and [d]efendants would still have the right to
14 foreclose[.]" *Hamana*, 2010 WL 3292953, at *2.
15    Finally, the court notes that plaintiffs have not alleged that defendants had a willful intent
16 to enter into a usurious transaction and therefore "the claim for usury also fails as a basis for
17 preliminary injunctive relief." *Rivera*, 2010 WL 2757041, at *7. For all of these reasons, the
18 court concludes that plaintiffs have not carried their burden of demonstrating their likelihood of
19 success on their usury claim.
20    In sum, the court concludes that plaintiffs have failed to demonstrate that they are likely to
21 succeed on the merits of any of their claims.

22 **D.     Other *Winter* Factors**

23    The court will briefly touch on the remaining *Winter* factors: that plaintiffs are likely to
24 suffer irreparable harm in the absence of relief, that the balance of equities tips in their favor, and
25 that an injunction is in the public interest. *Stormans, Inc.*, 586 F.3d at 1127. However, the court

---

[7] Plaintiffs allege that "more than $1,300,000.00 remain[s] due," but they also state in their complaint that defendants "should agree" to "a balance payment due . . . of $788,333.35." (Doc. No. 1 at 5.)

10

notes that "with no likelihood of success on the merits, the court does not need to [do so]." *Ensign v. U.S. Bank Nat'l Ass'n*, No. 3:16-cv-01609-HZ, 2016 WL 6897785, at *3 (D. Or. Nov. 22, 2016); *see also Winter*, 555 U.S. at 20.

First, the court acknowledges that the loss of one's residence can be serious or even irreparable harm. *Cutlip v. Deutche Bank Nat'l Tr. Co. for Harborview Mortg. Loan Tr. Pass-Through Certificates 2007-7*, No. 15-cv-01345-BLF, 2015 WL 1928257, at *4 (N.D. Cal. Mar. 27, 2015). However, "in the absence of a likelihood of success on the merits, loss of property alone is not sufficient" to obtain the "extraordinary remedy" of injunctive relief. *Michener v. Wells Fargo Home Mortgage*, No. 12-cv-02003-PJH, 2012 WL 3027538, at *4 (N.D. Cal. July 24, 2012).

To satisfy the next factor of the *Winter* test, the balance of hardships must tip sharply in plaintiffs' favor. *All. for Wild Rockies*, 632 F.3d at 1133. Here plaintiffs allege that they "lost over two million dollars in two foreign investments" but defendants have nonetheless still been pursuing collection on the balance of the loan through an "aggressive collection process." (Doc. No. 1 at 6.) While the court understands that plaintiffs are facing a financial hardship, this does not appear to be the result of any unlawful action by defendant, and plaintiffs have already avoided two trustee sales by filing for bankruptcy. (*Id*. at 5.) Accordingly, the court finds that plaintiffs have failed to demonstrate that the balance of the hardships tips sharply towards them. *See Buchanan v. Gandhi*, No. C22-cv-01482-PHX-SMB, 2023 WL 6148087, at *3 (D. Ariz. Sept. 20, 2023) (finding that the plaintiff failed to satisfy this factor where the plaintiff could not "cite legal authority or articulable facts demonstrating any viable claim for unlawfulness on behalf of the Defendants or the property's foreclosure").

Finally, "the public interest inquiry primarily addresses impact on non-parties rather than parties and takes into consideration the public consequences in employing the extraordinary remedy of injunction." *hiQ Labs, Inc. v. LinkedIn Corp*., 31 F.4th 1180, 1202 (9th Cir. 2022) (internal quotation marks and citation omitted). "The public has a strong interest in foreclosure sales being conducted according to the letter and the spirit of the law." *Mcbride v. PHH Mortg. Corp*., No. 2:23-cv-02242-WBS-DB, 2024 WL 557791, at *2 (E.D. Cal. Feb. 12, 2024). Courts

will not find that injunctive relief is in the public interest when "it would shield debtors from the agreed-upon repercussions of a failure to repay debt." *Karam v. Specialized Loan Servicing LLC*, No. 22-cv-00029-TUC-RCC, 2022 WL 2439220, at *2 (D. Ariz. July 5, 2022).  Here, the court finds that plaintiffs have failed to show that allowing defendants to proceed with the scheduled trustee sale of plaintiffs' property on October 30, 2024 would violate the letter and the spirit of the law, and thus they have also failed to satisfy this factor of the *Winter* test as well.

## CONCLUSION

For the reasons explained above, plaintiffs' motion for a temporary restraining order (Doc. No. 12) is denied.

IT IS SO ORDERED.

Dated:  **October 29, 2024**             /s/ Dale A. Drozd
                                      DALE A. DROZD
                                      UNITED STATES DISTRICT JUDGE

12